

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THERESA RUEBBLING, Individually and as Heir of VICTORIA RANGEL, Deceased, | § | No. 08-23-00054-CV |
| | § | |
| Appellant, | § | Appeal from |
| | § | |
| v. | § | 421st Judicial District Court |
| | § | |
| FOREMOST COUNTY MUTUAL INSURANCE COMPANY, | § | of Caldwell County, Texas |
| | § | (TC# 21-O-421) |
| Appellee. | § | |

## DISSENTING MEMORANDUM OPINION

I write separately because I disagree that Foremost properly established standing to bring an interpleader action. At the time it filed its petition, Foremost's insured's liability under the auto insurance policy remained contested in a wrongful death lawsuit pending in Travis County. Thus, Foremost did not *yet* qualify as a disinterested stakeholder of the $100,000 of its insured's policy limits. Moreover, as to those funds, neither Theresa Ruebbling nor Jorge Rangel, as Victoria's heirs, qualified as "claimants"—much less "rival claimants"—as no direct-action rights had *yet* accrued to either of them while the wrongful death action remained in dispute. For these reasons, I would conclude that Foremost lacked standing to seek interpleader protection and attorney's fees at the time when it filed suit. Thus, I would conclude the Caldwell County district court erred in

denying Theresa's plea to the jurisdiction as it lacked subject-matter jurisdiction over Foremost's interpleader action.

## STANDING AND INTERPLEADER PRACTICE

Standing is a component of subject matter jurisdiction, and a court must have subject matter jurisdiction to entertain a suit. *Mosaic Baybrook One, L.P. v. Simien*, 674 S.W.3d 234, 250 (Tex. 2023); *State Bar of Texas v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) ("As a general proposition, before a court may address the merits of any case, the court must have jurisdiction over the party or the property subject to suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment, and capacity to act as a court."). Along these lines, "[s]ubject matter jurisdiction requires that the party bringing the suit have standing, that a live controversy exists between the parties, and that the case be justiciable." *Owens v. Allstate Ins. Co.*, 996 S.W.2d 207, 208 (Tex. App.—Dallas 1998, pet. denied) (discussing standing in the context of an interpleader suit). Standing is a threshold requirement—a constitutional prerequisite—to maintaining a lawsuit. *Farmers Texas Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 24–41 (Tex. 2020); *see also Owens*, 996 S.W.2d at 208.

In its earliest form, "an interpleader action allowed a stakeholder to bring the disputed sum or property into court and have its own liability discharged, leaving the rival claimants to litigate whatever controversy existed." *Savs. & Profit Sharing Fund of Sears Employees v. Stubbs*, 734 S.W.2d 76, 79 (Tex. App.—Austin 1987, no writ.). Indeed, "[t]he remedy was for the protection of the disinterested and innocent stakeholder who claimed no interest in the property and who, because of conflicting claims and uncertain position," knew not what to do. *Id.* (citing *Nixon v. Malone*, 262, 98 S.W. 380, 385 (Tex. 1908)) ("each of said companies was a disinterested stakeholder, admitting its liability, but not knowing to whom to pay the money, . . . and asked to

2

be allowed to pay the money in its hands,[], into court, and that the diverse claimants be required to interplead among themselves, and that the court settle their respective rights to said money[.]"). Such an innocent stakeholder ordinarily sought interpleader protection as a means to "ask[] instructions and protection from a court of equity." *Nixon*, 98 S.W. at 385.

But, in doing so, the stakeholder had to plead and prove four essential elements: "(1) that he was subject to conflicting claims to the same property; (2) that the adverse claims were dependent or derived from a common source; (3) that he claimed no interest in the property; and (4) that he was not independently liable to any claimant but rather stood perfectly indifferent between them." *Stubbs*, 734 S.W.2d at 79 (citing 1 ROY W. MCDONALD, TEXAS CIVIL PRACTICE § 3.38 at 289 (Rev. ed. 1981)). Courts were instructed to give every reasonable doubt in favor of allowing the interpleader action when applying these requirements. *Id.* (citing *Nixon*, 98 S.W. at 385). Against this common law background, Rule 43 was adopted in 1941 as part of the initial pronouncement of the Texas Rules of Civil Procedure. *See id.* In modern times, this rule has been interpreted as requiring an interpleader petitioner to plead and prove: "(1) that he is either subject to, or has reasonable grounds to anticipate, rival claims to the same fund or property; (2) that he has not unreasonably delayed filing his action for interpleader; and (3) that he has unconditionally tendered the funds into the court." *Id.*; *see also Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018).

The Supreme Court of Texas has instructed that "interpleader jurisdiction is determined at the time the interpleader complaint is filed." *Rodriguez*, 547 S.W.3d at 850. Consequently, the jurisdictional inquiry is limited to the initial interpleader petition without need to account for subsequent events, such as the later elimination of adverse claims to interpleaded funds. *Id.* (citing *Auto Parts Mfg. MS, Inc. v. King Constr. of Houston, L.L.C.*, 782 F.3d 186, 193–94 (5th Cir. 2015)

3

(holding that a properly filed interpleader did not become improper even when the prospect of multiple adverse claims against the interpleaded funds was eliminated). A failure to meet any one of the three required elements defeats a petitioner's standing—as an innocent stakeholder—and precludes relief by means of an interpleader action. *Stubbs*, 734 S.W.2d at 79.

## ANALYSIS

### A. Whether Foremost qualified as a disinterested stakeholder

To begin, Foremost claims the jurisdictional evidence conclusively established it was an innocent, disinterested stakeholder at the time it sought interpleader protection and attorney's fees. Specifically, it claims it had no pecuniary interest in the $100,000 policy limits—which it characterizes as "settlement proceeds"—even though it plainly acknowledged its insured's liability remained contested in the wrongful death lawsuit pending in Travis County. Although Foremost largely relies on pronouncements in *Rodriguez*, I would conclude the case does not support its position.

Interpreting interpleader requirements, *Rodriguez* referenced Black's Law Dictionary for the ordinary meaning of the term, "innocent, disinterested stakeholder." *Rodriguez*, 547 S.W.3d at 852. There, it held that "innocent" means "free from legal fault;" "disinterested" means "not having a pecuniary interest in the matter at hand;" and "stakeholder" means "[a] disinterested third party who holds money or property, the right to which is disputed between two or more other parties." *Id.* (citing BLACK'S LAW DICTIONARY (10th ed. 2014)). As a result, "[u]nder the unambiguous meaning of [the] term 'disinterested stakeholder,' a party who asserts a claim to the interpleaded funds is not a disinterested stakeholder." *Id.* (citing *FinServ. Cas. Corp. v. Transamerica Life Ins. Co.*, 523 S.W.3d 129, 141 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The Court thus

4

concluded petitioner's position as an alleged tortfeasor prevented it from being a disinterested stakeholder. *Id.*

*Rodriguez* explained that an interpleader action is appropriate in situations such as when an insurance company faces competing claims to benefits or when a bank faces multiple claims to funds in a bank account. Nonetheless, it noted, "[b]ut we find no precedent to support extending the protection of interpleader—and the accompanying attorney's fees—to an alleged tortfeasor/defendant." *Id.* The court added "the allowance of attorney's fees for an alleged tortfeasor/defendant attempting to interplead the extent of his liability is adverse to public policy." *Id.* The Court offered as further explanation an argument posited from counsel for one of the claimants:

> It's the same thing as if I'm driving down the street on the way home today and I hit a car with two people in it and I injure the driver and I injure the passenger. And they turn around to me and they say, "We're both going to sue you for money." I've only got $1,000. I can't give you more than $1,000. That's all I have, and I have no insurance. Okay. "Well," driver says, "I want $1,000"; passenger says, "I want $1,000." I'm like, "conflicting claims. I'm going to interplead this to the court. Judge, I'm interpleading it. I'm an attorney. It costs me $1,000 to do that, so I'll take the $1,000 back. Sorry, guys, you get nothing.

*Id.* (cleaned up). Relevant here, I agree with the Court's interpretation of innocent, disinterested stakeholder, and I would apply the limitation here, although the case is not directly on point.

As judged from the time it filed its interpleader petition, I would hold that Foremost is not an "innocent" or "disinterested" stakeholder. As an insurer of Ericka Ruebbling (who permitted her son Damian to drive her vehicle), Foremost stands in the shoes of an alleged tortfeasor by virtue of its contractual liability under Ericka's auto insurance policy. Though Foremost (and the majority) characterize the interpleaded funds as "settlement proceeds," in actuality, those funds remain contested as no liability has yet been adjudicated nor a settlement reached with Foremost's

5

insured. Contrary to its self-serving, conclusory argument, Foremost's *only* interest in the interpleader was in fact pecuniary in nature in that it immediately sought attorney's fees from the policy limits of its insured's liability coverage. Although interpleader relief might be available at a future time when liability has been determined or resolved, I would conclude that Foremost did not *yet* qualify as a disinterested stakeholder when liability remained contested in Travis County.

### B.   Whether Theresa or Jorge qualified as policy claimants

For a second reason, I would hold that Foremost was not entitled to bring its interpleader action when it filed in Caldwell County. At that point, Theresa and Jorge were not yet entitled to bring direct claims against the funds held by Foremost without successfully adjudicating Ericka's liability in the Travis County suit or otherwise obtaining her consent to settlement. Plainly, on this record, I would conclude that Theresa and Jorge had no direct-action rights against Foremost despite the existence of a purported release signed by them.

The "Full and Final Release of Bodily Injury Liability Wrongful Death Claim," dated June 24, 2021, purported to discharge three parties, Ericka, Damian's estate, and Foremost, from any bodily injury liability wrongful death claim. As consideration, Theresa and Jorge were to receive payment of $100,000, the bodily injury policy limits Ericka purchased from Foremost under her auto insurance policy. In late June and early July 2021, Theresa's attorney, Jorge's attorney, and Foremost's representatives exchanged a number of emails discussing how to pay out the policy proceeds: ultimately, they did not concur. On July 21, 2021, Theresa filed suit in Travis County against Ericka, Foremost's insured; Damian's estate; and the driver of the second vehicle involved in the collision. On August 3, 2021, despite the ongoing tort litigation in Travis County, Foremost filed its petition for interpleader in Caldwell County, where it later requested and was

6

awarded approximately twenty percent of the policy proceeds as attorney's fees, all before liability was yet determined or settled on the part of its insured.

An examination of whether Theresa and Jorge had legitimate claims to Foremost's policy proceeds at the time it filed for interpleader requires an analysis of the nature of their claims. In Texas, injured third-parties like Theresa and Jorge, who lost their daughter Victoria allegedly as a result of a car collision, cannot enforce liability directly against an insurer "until it has been established, by judgment or agreement, that the insured has a legal obligation to pay damages to the injured party." *State Farm Cnty. Mut. Ins. Co. of Texas v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989) (per curiam). Theresa and Jorge had not, as of yet, obtained a judgment against Foremost. Nor does the purported release indicate by its terms they had reached an agreement as to the insured's liability. As a result, Foremost had no legal obligation to them that could be directly enforced. *See id*. To that extent, they are not *yet* rival claimants to Foremost's funds. *See id.*

Relevant to the lack of a judgment against Foremost, Texas is not a direct-action state, *see id. Penny v. Powell*, 347 S.W.2d 601, 603 (Tex. 1961), meaning that "[a] tort claimant has no direct cause of action against the tortfeasor's liability insurer until the insured-tortfeasor is adjudged liable to the tort claimant." *Jones v. CGU Ins. Co.*, 78 S.W.3d 626, 629 (Tex. App.—Austin 2002, no pet.) (citing *Grasso v. Cannon Ball Motor Freight Lines*, 81 S.W.2d 482, 486 (Tex. 1935)). Based on this prohibition, I would hold that neither Theresa nor Jorge could pursue a direct claim against Foremost at the time it sought interpleader protection and attorney's fees.

Moreover, Foremost did not establish that Theresa or Jorge had claims to policy proceeds under the Release language itself. A third-party tort claimant has no direct action based on an agreement unless the agreement determines the tortfeasor's liability. *See Ohio Cas. Ins. Co. v. Time Warner Ent. Co., L.P.*, 244 S.W.3d 885, 888 (Tex. App.—Dallas 2008, pet. denied). Here,

7

Foremost did not produce an agreement determining such liability as the Release it relies on specifically provides it "is not an admission of liability by any of the RELEASED PARTIES, by whom liability has been and is still denied."

In sum, Foremost's lack of an obligation to pay funds to Theresa and Jorge, under either a judgment or a settlement, meant that neither of them qualified as claimants at the time Foremost filed suit. *See Owens*, 996 S.W.2d at 209. Protected by the direct-action prohibition, Foremost was not *yet* subject to claims by rival claimants. "Although rule 43 allows an insurance company that was or may become exposed to multiple liability to interplead and join *claimants* as defendants," neither Theresa nor Jorge were yet entitled to assert direct claims against Foremost. *See id.* (emphasis in original). As in *Owens*, then, the prerequisites authorizing an interpleader action had not been met and Foremost lacked standing to file its interpleader action.[1] *See Ohio Cas. Ins.*, 244 S.W.3d at 888; *Owens*, 996 S.W.2d at 208–09.

## CONCLUSION

I would conclude that Foremost has successfully used an interpleader action not to assert its disinterest in disputed property, but rather to seek an early discharge of liability and attorney's fees, which were paid directly from the $100,000 policy limits it otherwise owed under the liability coverage. In my view, this exploitation of the interpleader process by a liability insurer is not supported by Texas law nor does this result honor the intent of the equitable nature of the action. An interested party such as an insurer standing in the place of an alleged tortfeasor is not entitled

---

[1] Public policy also supports this determination, as it prevents "the conflict of interest that could arise if a third-party claimant were permitted to sue an insurer before obtaining judgment against the insured." *Ohio Cas. Ins.*, 244 S.W.3d at 888–89. Indeed, the Prompt Payment Act of the Texas Insurance Code, to which the majority refers, prevents any obligation to a third-party claimant like Ruebbling by defining a "claim" as one belonging to an insured or policyholder, that is, a "first party," and a "claimant" as a person making a first-party claim. *See* TEX. INS. CODE ANN. § 542.051(3), (4).

to interpleader protection. *Cf. Rodriguez*, 547 S.W.3d at 852. Further, the absence of a real controversy between rival claimants defeats standing and justiciability. *See Owens*, 996 S.W.2d at 209.

Consequently, I would conclude that Foremost lacked standing to bring its interpleader and the trial court lacked subject matter jurisdiction. Because I reach that conclusion, I would further conclude the trial court did not have jurisdiction to render summary judgment on Foremost's request for relief and it was not entitled to attorney's fees. *See Daniels v. Pecan Valley Ranch, Inc.*, 831 S.W.2d 372, 385 (Tex. App.—San Antonio 1992, writ denied) (failure to meet the requisites of bringing an interpleader action defeats a petitioner's standing and precludes recovery of attorney's fees in the interpleader action). For all these reasons, I respectfully dissent.


GINA M. PALAFOX, Justice

January 29, 2024

Before Palafox and Soto, JJ., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.), sitting by assignment
Palafox, J., dissenting